The appealing party has shown good grounds to reconsider the evidence. However, upon much detailed reconsideration of the evidence, the undersigned reach the same facts as those reached by the Deputy Commissioner, with some modification, but modify the conclusions and holding of the Deputy Commissioner. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act, and the Commission has jurisdiction over this matter.
2. An employee-employer relationship existed between the two parties on the dates in question.
3. The employer is a qualified self-insurer with Hewitt, Coleman Associates, Inc., providing the third-party administration for the employer.
4. The average weekly wage is to be determined by the Commission using Form 22's.
5. The employer admits the employee contracted bilateral carpal tunnel syndrome from her creeling job on January 6, 1993, and the employer has been paying benefits at a rate of $240.03 for the compensation rate during all periods of temporary total disability.
6. The parties entered into a Pre-Trial Agreement with attached medical records which were stipulated into evidence.
7. The only issue for determination in this matter is whether there should be a new date of onset of occupational disease on November 21, 1995.
 *********** RULING ON EVIDENTIARY MATTER
Plaintiff argues that the deposition of Dr. Christopher T. Lechner should not be admitted into evidence based upon theex parte communications between defense counsel and Dr. Lechner. Defendant, without notice to or knowledge of plaintiff or her counsel, showed Dr. Lechner a copy of a job videotape. In light of the Commission's holding in this case, the Deputy Commissioner's allowance of the deposition testimony of Dr. Lechner was harmless error.
 ***********
Based upon all of the competent evidence from the record herein, the Full Commission adopts the findings of fact by the Deputy Commissioner with minor modifications as follows:
 FINDINGS OF FACT
1. Plaintiff was employed as a creeler with the employer from 1988 until January 6, 1993. After plaintiff returned to work following her surgery on February 23, 1993, she was employed as a loom inspector with the defendant-employer through November 21, 1995.
2. Plaintiff's job as a loom inspector involved minimum use of her hands. The job involved steaming 18 to 36 inch sections of cloth, 20 to 30 times during a 12 hour shift. Steaming each section of cloth took approximately two minutes each time. The job also involved writing tickets which took approximately two minutes and was performed from 15 to 50 times during a 12 hour shift. Plaintiff also folded cloth at a length of approximately 2 1/2 yards onto a pallet after inspection of the material. This occurred approximately eight to ten times a day and only took one minute to perform. The remaining duties of plaintiff involved roaming the plant to visually and manually inspect cloth for defects. This activity involved no use of the wrists and minimal use of the fingers. Overall, the job involved little or no force to complete, and all of the tasks were not performed in a sequential manner, and the movements were intermittent and sporadic throughout the day.
3. Plaintiff's treating physician, Scott M. McCloskey, M.D., testified based on the above facts, that plaintiff's job did not place her at an increased risk of developing carpal tunnel syndrome than members of the general public, and the job was not a significant casual factor in the development of carpal tunnel syndrome.
4. Dr. McCloskey testified the recurrence of carpal tunnel syndrome was based on scar tissue which can occur even without the repetitive use of the hands.
5. The employer has been paying workers' compensation benefits at the rate of $240.03 weekly during all periods of temporary total disability, including since November 21, 1995, based upon an average weekly wage of $360.02 as set forth in the Form 21 Agreement for the January 6, 1993 injury. The parties agreed in their Pre-Trial Agreement before the Deputy Commissioner that the Commission could determine the average weekly wage based upon the Form 22 Wage Chart. Plaintiff's average weekly wage pursuant to the Form 22 is $208.39 which yields a compensation rate of $138.93.
6. There is insufficient evidence of record to prove by the greater weight of the Form 21 Agreement should be set aside for error due to fraud, misrepresentation, undue influence or mutual mistake as required by N.C. Gen. Stat. § 97-17.
 ***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff has not carried the burden of proof in establishing her job as loom inspector with the defendant placed her at an increased risk of developing carpal tunnel syndrome than members of the general public. There is also insufficient evidence to indicate her job was a significant causal factor in the development of carpal tunnel syndrome. The plaintiff's carpal tunnel syndrome is a continuation of the compensable occupational disease which began January 6, 1993, and a new date of onset of the development of the occupational disease should not be established.
2. Plaintiff is entitled to compensation at the rate of $240.03 weekly beginning on November 21, 1995 and continuing until further order of the Commission pursuant to the Form 21 Agreement approved on April 12, 1993 by the North Carolina Industrial Commission.
3. Defendant is obligated to provide to plaintiff such medical treatment as is reasonably required as a result of her occupational disease to effect a cure, give relief or lessen plaintiff's disability. N.C. Gen. Stat. § 97-25
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. The employee's claim for a new onset date of occupational disease as of November 21, 1995 is, and under the law, must be DENIED.
2. Defendant shall pay all reasonable medical expenses incurred or to be incurred in the future by plaintiff as a result of his compensable occupational disease when bills for the same have been submitted through the defendant and approved according to procedures adopted by the Industrial Commission.
3. Defendant shall pay plaintiff temporary total disability at the weekly rate of $240.03 beginning November 21, 1995 and continuing until further order of the Commission.
4. Each side shall pay its own costs.
This the ___ day of February 1999.
 S/_________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/______________________ J. HOWARD BUNN, JR. COMMISSIONER
S/______________________ THOMAS J. BOLCH COMMISSIONER